## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

TERENCE SOHLER, Individually and on Behalf of All Others Similarly Situated, and Derivatively on Behalf of KODIAK OIL & GAS CORP.,

      Plaintiff,

      v.

WHITING PETROLEUM CORPORATION,
1007695 B.C. LTD.,
LYNN A. PETERSON,
JAMES E. CATLIN,
WILLIAM J. KRYSIAK,
RODNEY D. KNUTSON and
HERRICK K. LIDSTONE, JR.,

      Defendants,

      – and –

KODIAK OIL & GAS CORP., a Canadian corporation,

      Nominal Party.

---

## PLAINTIFF'S VERIFIED SHAREHOLDER DERIVATIVE
## AND CLASS ACTION COMPLAINT

---

Plaintiff, by counsel, individually and on behalf of all others similarly situated and derivatively on behalf of Kodiak Oil & Gas Corp. ("Kodiak" or the "Company"), respectfully brings this class and derivative action for breach of fiduciary duties, aiding and abetting such breaches, and violations of federal securities laws against the herein named defendants and alleges the following:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action derivatively on behalf of Kodiak and individually and on behalf of all other similarly situated stockholders of Kodiak, setting forth claims for breach of fiduciary duty, aiding and abetting such breaches, and violations of federal securities law against Kodiak's Board of Directors (the "Board" or the "Individual Defendants"), Whiting Petroleum Corporation ("Whiting Petroleum"), and 1007695 B.C. Ltd., a company organized under the laws of British Columbia, Canada, and a wholly-owned subsidiary of Whiting Petroleum ("Acquiror Canadian Sub," and with Whiting Petroleum, "Whiting"). These claims arise out of defendants' efforts to complete the sale of Kodiak to Whiting pursuant to an unfair process and for an unfair price (the "Proposed Transaction").

2.     On July 13, 2014, defendants announced that the Board agreed to sell Kodiak to Whiting for approximately $6 billion in Whiting common stock. Pursuant to the parties' Arrangement Agreement dated July 13, 2014 (the "Arrangement Agreement") Kodiak shareholders will receive 0.177 of a share of Whiting common stock for each share of Kodiak stock they own. Based on the closing price of Kodiak's common shares of $14.23 on July 11, 2014, the Proposed Transaction had an implied price of $13.90. If the Proposed Transaction is allowed to close, Whiting shareholders will own approximately 71% percent and Kodiak shareholders will own 29% of the go-forward company.

3.      Beginning in December 2011, the Board began a nearly year-long sales process during which the Company both considered unsolicited proposals to acquire Kodiak and actively solicited bids from likely buyers.  Kodiak and its financial advisors contacted at least 16 potential buyers and engaged in due diligence with at least four companies.  When this sales process failed to produce a single offer, whether formal or informal, that would provide a premium above Kodiak's then-current stock price, the Board naturally concluded that, rather than pursuing a sale, "shareholder value would be best enhanced by effective implementation of Kodiak's existing operational strategy."  In other words, the best manner in which the Board could provide returns to its investors was for the Company to focus on executing its standalone business plan.

4.      Nonetheless, Lynn Peterson ("Peterson"), who has served as Kodiak's President and Chief Executive Officer ("CEO") since July 2002, continued to push the Company towards a sale.  Specifically, in January 2013, Peterson contacted Whiting about a potential business combination.  Following negotiations in which Peterson put his own financial interests ahead of those of Kodiak stockholders, the Board approved the Proposed Transaction even though the consideration offered represented a *2% discount* to Kodiak's stock price at the time the Arrangement Agreement was approved.  Rather than seeking a competitive bidding process designed to produce the highest price reasonably obtainable, the Board engaged in exclusive negotiations with Whiting and shunned the overtures of other potential buyers that came forward when Kodiak was finalizing the Arrangement Agreement.

5.      To no surprise, the Board's unfair sales process has produced an unfair price for Kodiak's stockholders.  According to *Bloomberg* data, Kodiak would be the first North American oil and gas producer to be acquired for a negative premium since 2008, while the average premium for

such buyouts has been approximately 26%. The implied price of $13.90 per share is also well below the Company's prior all-time high of $14.79 per share, which was only recently reached on July 9, 2014. Further, the proposed consideration undervalues Kodiak's soaring stock price and strong standalone business prospects that are reflected by the Company's stellar operating results since 2013.

6.     Despite truncating the sales process, defendants locked up the Proposed Transaction through deal protection provisions contained in the Arrangement Agreement that are designed to now prevent even an unsolicited bid from any alternate buyers. Collectively, these provisions are preventing the Board from receiving a value-maximizing proposal and include: (i) a "no-solicitation" provision that precludes Kodiak from providing confidential Company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances; (ii) an illusory "fiduciary out" for the No-Shop provision that requires the Company to provide Whiting with advance notice before providing any competing bidder with any confidential Company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal; (iii) an "information rights" provision that requires the Company to provide Whiting with confidential, non-public information about competing proposals, which Whiting can then use to formulate a matching bid; (iv) a "matching rights" provision that requires Kodiak to provide Whiting with the opportunity to match any competing proposal; and (v) a "termination fee" provision that requires Kodiak to pay Whiting $130 million and up to $10 million in expenses if the Proposed Transaction is terminated in favor of a superior proposal.

7.     In an attempt to secure stockholder support for the Proposed Transaction, Kodiak issued a materially false and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy

Statement") on August 18, 2014.   The Proxy Statement, which recommends that Kodiak stockholders vote their shares in favor of the Proposed Transaction, omits and/or misrepresents material information that is preventing stockholders from being able to cast a fully informed vote, including: (i) Kodiak's strategic alternatives and long-term strategic plan; (ii) the terms of the transactions proposed by third parties that contacted the Company in early June 2014; (iii) the Board's selection of financial advisors; and (iv) inputs and assumptions underlying valuation analyses performed by Petrie Partners Securities, LLC ("Petrie"), Credit Suisse Securities LLC ("Credit Suisse"), and J.P. Morgan Securities LLC ("J.P. Morgan").

8.      In summary, the Proposed Transaction is the product of a hopelessly flawed process that was designed to ensure that the sale of Kodiak was on terms preferential to Whiting and defendants, and detrimental to plaintiff and Kodiak's stockholders.  Plaintiff seeks to enjoin the Proposed Transaction.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Securities Exchange Act of 1934 (the "1934 Act"), for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

10.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(l) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

11.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this judicial district, or is an

individual who has sufficient minimum contacts with this judicial district so as to render the exercise

of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper within this judicial district pursuant to 28 U.S.C. §1391(b), (c) and

(d).  Numerous defendants maintain their offices, have agents, transact business and are found within

this judicial district.  Moreover, a substantial part of the events and omissions giving rise to the

claims alleged herein arose in part within this judicial district, including the negotiations leading up

to the execution of the Merger Agreement.  Finally, defendants inhabit and/or may be found in this

judicial district and the interstate trade and commerce described herein are and have been carried out

in part within this judicial district.

## PARTIES

13.     Plaintiff Terence Sohler is, and at all times relevant hereto was, a stockholder of

Kodiak. Plaintiff Sohler is a resident of the State of North Dakota.

14.     Nominal party Kodiak is a Canadian corporation headquartered in Denver, Colorado.

15.     Defendant Whiting Petroleum is a Delaware corporation headquartered in Denver,

Colorado. Whiting Petroleum is sued herein as an aider and abettor.

16.     Defendant Acquiror Canadian Sub is a company organized under the laws of British

Columbia, Canada and a wholly-owned subsidiary of Whiting Petroleum.  Acquiror Canadian Sub is

sued herein as an aider and abettor.

17.     Defendant Peterson, co-founder of Kodiak, is and at all times relevant hereto has been

the Chairman, CEO, President and a director of Kodiak.  Defendant Peterson is a resident of the

State of Colorado.

18.     Defendant James E. Catlin ("Catlin"), co-founder of Kodiak, is and at all times relevant hereto has been Executive Vice President, Business Development, and a director of Kodiak. Defendant Catlin is a resident of the State of Colorado.

19.     Defendant William J. Krysiak ("Krysiak") is and at all times relevant hereto has been a director of Kodiak. Defendant Krysiak is a resident of the State of Colorado.

20.     Defendant Rodney D. Knutson ("Knutson") is and at all times relevant hereto has been a director of Kodiak. Defendant Knutson is a resident of the States of Colorado and Florida.

21.     Defendant Herrick K. Lidstone, Jr. ("Lidstone") is and at all times relevant hereto has been a director of Kodiak. Defendant Lidstone is a resident of the State of Colorado.

22.     The defendants named above in ¶¶17-21 are sometimes collectively referred to herein as the "Individual Defendants."

## THE PROPOSED TRANSACTION

23.     Denver-based Kodiak is an independent energy company focused on the exploration, exploitation, acquisition and production of natural gas and crude oil in the United States.  The Company's oil and natural gas reserves and operations are primarily concentrated in two Rocky Mountain basins: the Williston Basin of North Dakota and Montana and the Green River Basin of Wyoming and Colorado. Kodiak has developed an oil and natural gas portfolio of proved reserves, as well as development and exploratory drilling opportunities on high potential conventional and non-conventional oil and natural gas prospects that the Company has the opportunity to explore, drill and develop.

24.     Kodiak is a fast growing participant in the Bakken formation in North Dakota and Montana, with 171,000 net acres and 1,300 future drilling locations, and the Company is expected to grow its production by 35%-45% this year.

25.     Competition for Bakken assets is fierce because the geologic formation beneath North Dakota and Montana is the most prolific U.S. shale region, on a barrels-per-well basis, according to data compiled by *Bloomberg*. Because most drilling rights on privately owned land in the area have already been snapped up by corporations, explorers can only expand through acquisitions.

26.     New wells drilled in the Bakken formation pump an average of 510 barrels of oil a day, compared to 479 barrels of oil a day for wells in the Eagle Ford Shale in south Texas and almost four times as much as Permian Basin wells in west Texas and New Mexico, according to data compiled by *Bloomberg*. The relatively high crude output means explorers may recoup their drilling costs and begin booking profits from Bakken wells faster than those in other formations.

27.     Despite its extremely valuable Bakken assets and anticipated 35%-45% production growth this year, on July 13, 2014, Kodiak announced that its Board had decided to sell the Company to Whiting.  Under the terms of the Arrangement Agreement, Whiting will acquire the Company in an all-stock transaction in which the Company's stockholders would receive just .177 of a Whiting share for each share of Kodiak common stock held.  The press release announcing the Proposed Transaction states in pertinent part:

**Whiting Petroleum Corporation to Acquire Kodiak Oil & Gas Corp. in All-Stock Transaction Valued at $6.0 Billion**

Creates #1 Bakken/Three Forks producer

. . . Whiting Petroleum Corporation ("Whiting") and Kodiak Oil & Gas Corp. ("Kodiak") today announced a definitive agreement pursuant to which Whiting will acquire Kodiak in an all-stock transaction valued at $6.0 billion, based on the closing

– 7 –

price of Whiting on July 11, 2014, and including Kodiak's net debt of $2.2 billion as of March 31, 2014.

The transaction will create the largest Bakken/Three Forks producer with over 107,000 barrels of oil equivalent per day of production in the first quarter of 2014, 855,000 combined net acres and an inventory of 3,460 net future drilling locations. The combined company's leading oil-weighted platform will drive meaningful production and operational synergies through complementary acreage positions, the application of technological expertise and greater access to capital to accelerate drilling. In addition, the transaction materially enhances the combined company's scale, providing a stronger credit profile and greater financial flexibility.

The all-stock transaction will allow both Whiting and Kodiak shareholders to participate in the substantial upside potential inherent in the combination. Whiting's Chairman, Chief Executive Officer and President James J. Volker said, "We believe this transaction represents a significant opportunity for both Whiting and Kodiak shareholders to benefit from the strength of our combined company. The addition of Kodiak's complementary acreage position and substantial inventory of high return drilling locations will provide the opportunity to drive significant value growth for both Whiting and Kodiak shareholders through an acceleration in drilling and increase in operational efficiencies. The combined company's shareholders will also participate in Whiting's 175,000 gross (123,000 net) acre, oil-rich Redtail-Niobrara prospect in the NE DJ Basin, where production is rapidly growing. We expect the combined entity to have an initial enterprise value of $17.8 billion, total 2014 production of 152 thousand barrels of oil equivalent per day, and proved reserves of 606 million barrels of oil equivalent (80% oil), providing a leading platform for future oil-driven growth."

Mr. Volker continued, "We expect that the transaction will be accretive to Whiting's cash flow per share, earnings per share and production per share for 2015 and increasingly accretive thereafter. Furthermore, the combined company is expected to have significant financing flexibility, with a ratio of debt to 2014E EBITDA of approximately 1.6x. Additionally, we believe the all-stock transaction structure is credit enhancing."

Lynn A. Peterson, Chairman, President and Chief Executive Officer of Kodiak said, "We are proud to have reached an agreement that provides Kodiak shareholders with the opportunity to own a company with significant upside potential. We expect the combined company to have increased operational and financial flexibility that will allow for accelerated and efficient development of the assets of both companies. In particular, we have been very impressed by Whiting's operating capabilities and technical expertise, and we expect the combined company will benefit from the operating expertise Whiting will be able to bring to bear on the

combined portfolio.  Additionally, we expect the transaction to be tax free to Kodiak's U.S. shareholders."

**Transaction Details**

Under the definitive agreement, Kodiak shareholders will receive .177 of a share of Whiting stock in exchange for each share of Kodiak common stock they hold, representing consideration to each Kodiak shareholder of $13.90 per share based on the closing price of Whiting common stock on July 11, 2014.  This represents a premium of approximately 5.1% to the volume weighted average price of Kodiak for the last 60 trading days.  Following the transaction, shareholders of Whiting are expected to own approximately 71% of the combined company on a fully diluted basis, and shareholders of Kodiak are expected to own approximately 29%.

The Whiting senior management team will lead the combined company. Lynn A. Peterson and James E. Catlin will join the Board of Directors of the combined company at closing of the transaction.  Whiting has secured underwritten financing to increase its borrowing base to $4.5 billion with commitments totaling $3.5 billion.  This amount is sufficient to provide for all current drawings under Kodiak's credit facility and fund the combined company's ongoing liquidity needs.

**Approvals**

The Boards of Directors of both companies have unanimously approved the definitive agreement, and each will recommend the approval of the transaction to its respective shareholders.  Completion of the transaction is subject to the approval of both Whiting and Kodiak shareholders and certain regulatory approvals and customary conditions.  The transaction is expected to close in the fourth quarter of 2014.

**Advisors**

J.P. Morgan Securities LLC acted as financial advisor to Whiting, delivered a fairness opinion to Whiting's Board of Directors and provided the underwritten financing commitment to Whiting. Foley & Lardner LLP and Stikeman Elliot LLP acted as legal counsel to Whiting.  Petrie Partners Securities, LLC acted as financial advisor and delivered a fairness opinion to Kodiak's Board of Directors, while Credit Suisse Securities LLC delivered a fairness opinion to Kodiak's Board of Directors. Dorsey & Whitney LLP and Miller Thomson LLP acted as legal counsel to Kodiak.

## THE FLAWED SALES PROCESS

28.     Beginning in December 2011, the Board embarked on what ultimately became a nearly year-long process to evaluate both potential strategic transactions against the Company's standalone business plan.  This endeavor started in late 2011 when an executive of a major international oil and gas company, referred to in the Proxy Statement as "Company A," contacted Peterson to express Company A's interest in a potential acquisition of Kodiak.  During a meeting on December 18, 2011, the Board discussed Company A's interest, as well as Kodiak's long-term strategic goals and other available strategic alternatives.  At the conclusion of this meeting, the Board determined that a potential transaction with Company A warranted further review.

29.     Following the exchange of Company information, Company A provided the Board with its preliminary valuation assessment.  Despite the benefits it saw in an acquisition of the Kodiak, Company A informed Kodiak that it would be unable to make an acquisition proposal above Kodiak's then-current stock price.  The Board quickly determined that such a proposal would be insufficient, and Peterson informed Company A that Kodiak would only be interested in a sale that provided a "significant premium" to the Company's stockholders.

30.     In March 2012, the Board's attention shifted to a possible transaction with another oil and gas company referred to as "Company B," who similarly made an unsolicited inquiry regarding a possible acquisition of Kodiak.  In connection with assessing a possible transaction with Company B, the Board requested Credit Suisse and another nationally-known investment bank, referred to in the Proxy Statement as "Former Advisor A," to advise the Company on "certain potential strategic alternatives that might be available to Kodiak."

31.     After further discussions with Company B, as well as renewed discussions with Company A, failed to produce a meaningful proposal, the Board decided to initiate a broader sales process and actively solicit bids from other potential acquirors.  In September 2012, Credit Suisse and Former Advisor A identified 16 oil and gas companies that they believed would likely have an interest in acquiring Kodiak.  After contacting each of these companies, four expressed a high level of interest.  Kodiak entered into confidentiality agreements with each of these companies, and Kodiak management provided them with confidential business information in hopes of yielding a full-value proposal.

32.     Credit Suisse and Former Advisor A set a deadline of November 12, 2012 for the four companies to submit an acquisition proposal.  However, before that deadline even passed, each of the potential buyers informed Kodiak that they were unable to submit proposals at or above the then-current stock price for the Company.  As a result, none of these companies submitted an acquisition proposal.

33.     On November 5, 2012, the Board met to discuss both the results of the sales process and other strategic alternatives available to the Company.  At the conclusion of this meeting, the Board decided against a sale of the Company and determined that "*shareholder value would be best enhanced by effective implementation of Kodiak's existing operational strategy.*"  During 2013, Kodiak continued to receive interest in a potential buyout of the Company from companies not contacted during the prior sales process.  However, the Board similarly concluded that the proposed transactions were inferior to pursuing the standalone plan.

34.     Despite the Board's conclusion as to the best path to maximize the value of the Company, Peterson continued to pursue a possible sale.  On January 28, 2014, Peterson approached

- 11 –

James J. Volker ("Volker"), Chairman, President and CEO of Whiting, in order to discuss a potential transaction. Shortly following this meeting, Kodiak and Whiting entered into a confidentiality agreement, and the companies began preliminary due diligence.

35.     On March 9, 2014, the Board met to discuss retaining a financial advisor to advise the Company in its discussions with Whiting. However, rather than retaining either of the financial advisors that had just advised the Company in its earlier sales process, the Board retained Petrie. While Petrie's retention could have provided the opportunity to abate the inherent conflicts that exist when company insiders lead buyout discussions with a potential strategic acquirer, Peterson remained at the forefront of negotiations.

36.     On March 15, March 27, and April 17, 2014, Peterson and Volker participated in discussions regarding the terms of a potential transaction, including "potential exchange ratios, board representation, and related terms of the potential transaction." Following these discussions, on May 12, 2014, Whiting proposed terms for an acquisition of Kodiak that included 80% stock and 20% cash consideration, with one Kodiak director to be appointed to Whiting's board of directors.

37.     Following further buyout discussions, Kodiak countered Whiting's proposal with an offer that forfeited the security of a cash component as part of a transaction in favor of securing personal financial benefits for certain of Kodiak's directors. On June 6, 2014, Peterson proposed an all-stock transaction that would also require two Kodiak directors to be appointed to Whiting's board of directors following the closing of the transaction. In connection with these discussions, Volker proposed an exchange ratio of 0.170, while Peterson proposed an exchange ratio of 0.185. As the buyout discussions continued, the Board chose to retain a second financial advisor to provide a

fairness opinion in connection with a possible sale of the Company to Whiting, with Kodiak ultimately retaining Credit Suisse.

38.     On June 28, 2014, the Board met to discuss the Company's ongoing negotiations with Whiting.  At this meeting, Petrie also reviewed with the board "two new third-party inquiries regarding proposed strategic transactions received during the preceding week."  Petrie presented a "summary comparison of the assets, recent trading history, relative positioning and pro forma analyses a combination of Kodiak with each of the two new parties proposing strategic transactions and with Whiting."  However, rather than opening up the sales process to permit competitive bidding between all potential buyers that were interested in acquiring Kodiak, the Board chose to proceed with exclusive negotiations with Whiting.  Kodiak never responded to these new inquiries.

39.     Following negotiations of a definitive agreement, the Board met on July 13, 2014 to consider a proposed sale of Kodiak to Whiting for an exchange ratio of 0.177.  Although the implied consideration of $13.90 per share was actually a *2% discount* to Kodiak's then-current stock price, both Petrie and Credit Suisse blessed the transaction with an opinion of financial fairness.  The Board subsequently approved the Proposed Transaction, and Kodiak and Whiting entered into the Arrangement Agreement.

40.     To no surprise, Peterson – who acted as Kodiak's principal negotiator throughout the sales process – stands to reap the greatest benefits through the Proposed Transaction.  Foremost, Peterson, along with Kodiak director James E. Catlin, will join the Whiting board of directors following closing.  Further, Peterson holds over 17 million shares of Kodiak stock in the form of unvested restricted stock units and performance stock units, which will all immediately vest upon the completion of the Proposed Transaction.

**DEFENDANTS LOCKED UP THE PROPOSED TRANSACTION**

41.     Despite ignoring two new third-party inquiries regarding potential strategic transactions received just days before reaching an agreement with Whiting, the Board agreed to numerous terms and conditions in the Arrangement Agreement that are intended solely to deter any competing bids from other potential buyers.

42.     Foremost, pursuant to a "No Solicitation" provision contained in §4.9 of the Arrangement Agreement, neither Kodiak nor anyone acting on its behalf may "solicit, initiate, cause, knowingly encourage, or knowingly facilitate, any inquiries or the making of any proposal that constitutes or is reasonably likely to lead to a Takeover Proposal."  For purposes of this provision, "Takeover Proposal" is broadly defined to include: (i) any "merger, consolidation, arrangement, share exchange, dissolution, recapitalization or other business combination" involving Kodiak; (ii) any transaction involving "the issuance of 15% or more of the equity securities" as part of the consideration; (iii) any proposal to acquire "15% or more of the equity securities" of Kodiak; and (iv) "any other transaction, the consummation of which would reasonably be expected to impede, interfere with, prevent or materially delay" the Proposed Transaction.  Consequently, even though the Board truncated the sales process before executing the Arrangement Agreement, it cannot now correct that mistake by any soliciting competing proposals.

43.     Further, the "Fiduciary Out" provision without §4.9(b) of the Arrangement Agreement is merely illusory since it unduly impedes the Board's ability to accept a superior proposal.  Specifically, if (and only if) the Board makes the good faith determination, after consulting with outside counsel, that it must change its recommendation to stockholders and/or terminate the Arrangement Agreement in order to comply with its fiduciary duties, the Board must

still first provide Whiting advance notice of three-business days prior to taking any such actions (the "Advance Notice").

44.    Further, the Board must also provide Whiting with copies of any written offer from the alternate buyer in connection with the Advance Notice and negotiate in good faith with Whiting so that it may adjust the terms of its offer to match any superior proposal. Consequently, any third party interested in acquiring the Company must submit its proposal knowing that it will be subject to these significant substantive disadvantages.

45.    Lastly, pursuant to §6.2(b)(i), Kodiak must pay Whiting a penalty of $130 million if the Board decides to terminate the Arrangement Agreement, even if it does so in favor of a superior proposal. Consequently, any competing buyer must pay a naked premium simply for the right to acquire the Company.

## THE BOARD AGREED TO AN UNFAIR PRICE

46.    By any measure, the Proposed Transaction significantly undervalues Kodiak. Based upon Whiting's stock price at the time that the Board approved the Arranagement Agreement, the value of the consideration being offered is merely $13.90 per share. Incredibly, this price represents *a negative 2% premium* from the closing price of Kodiak stock on the last trading day before the Proposed Transaction was announced. According to *Bloomberg*, no North American oil and gas producer has been acquired for a negative premium since 2008, while the average premium in such buyouts has been approximately 26%. The implied price of $13.90 per share is also well below the Company's prior all-time high of $14.79 per share, which was only recently reached on July 9, 2014. The Proposed Transaction represents an enterprise value for Kodiak of $6 billion, which is roughly 8.8 times the Company's earnings before interest, taxes, depreciation and amortization ("EBITDA")

last year.  That compares with a median of 11.6 times EBITDA for U.S. oil and exploration deals since 2009 valued at more than $1 billion.

47.     The consideration offered in the Proposed Transaction fails to appropriately value Kodiak's strong business prospects as a standalone company.   In the months leading up to the Arrangement Agreement, Kodiak was experiencing an unprecedented surge in its stock price and was well positioned for future growth.  On February 11, 2014, Kodiak announced its operating results for the fourth quarter 2013 and full-year 2013.  For the fourth quarter, the Company reported oil and gas sales of $266.5 million, which represented a remarkable 104% increase to sales of just $130.8 million during the same period in 2012.  Kodiak also reported an 98% increase in quarter-over-quarter equivalent sales volumes with 3.3 million barrels of oil equivalent ("MMBOE"), as compared to 1.7 MMBOE during the same period in 2012.  For full-year 2013, Kodiak's oil and gas sales were $904.6 million, which represents an astounding 121% increase from just $408.7 million in 2012.  Kodiak also reported a 101% increase in oil sales volumes and a 119% increase in gas sales volumes in 2013, reflecting an overall annual increase of 103% in equivalent sales volumes. Commenting on the Company's stellar 2013 results in a Kodiak press release, Peterson expressed his optimism for the upcoming year:

> Last year was another exciting year for Kodiak and its shareholders. Our team did a tremendous job of delivering outstanding operating results and reserve growth while, at the same time, we materially expanded our future drilling inventory through downspacing work and an acquisition. In 2014, our focus continues to be on determining the optimum development blueprint for our leasehold while delivering operational excellence.

48.     As Peterson predicted, Kodiak's strong performance continued into 2013.  On May 1, 2014, the Company publicly announced its operating results for the first quarter of 2014, which was the last earnings announcement before the Board approved the Proposed Transaction.  The Company

– 16 –

reported oil and gas sales of $257.0 million, as compared to just $165.1 million during the same period in 2013.  Kodiak also reported an overall 57% increase in quarter-over-quarter equivalent sales volumes with 3.1 million MMBOE sold.  Adjusted EBITDA came in at $179.9, as compared to $124.4 million in the same period in 2013.  As Peterson explained during a conference call with stockholders and analysts, these stellar results came in the face of challenging whether conditions that adversely affected the Company's performance.

49.    Beyond the Company's soaring stock price and strong operating performance, the Proposed Transaction is also poorly timed for Kodiak due to pending operational improvements.  At the time the Board agreed to the Arrangement Agreement, the Company was engaged in testing for new drilling methods that represented significant value to Kodiak stockholders.  As *Motley Fool* observed:

> Kodiak investors might actually be best served by holding onto their shares a bit longer. One of the biggest criticisms leveled against the company is that its well costs, at $10 million, are above the industry average. However, the company has been testing new drilling strategies in an effort to producer [sic] higher returns. Selling before those gains are realized could equate to leaving money on the table.

> Further, with oil prices heading higher, Kodiak stands to benefit because those higher prices make it more profitable for the company to drill. With about 950 prospective drilling locations, Kodiak really does have a long growth runway. Until it finds a partner willing to pay a premium to access that growth, investors are better off keeping it to themselves.

50.    Moreover, the Proposed Transaction's price fails to properly recognize Kodiak's value to Whiting.  While Kodiak more than doubled production last year, Whiting's output growth slowed as its costs to bring new wells online surged.  The Proposed Transaction will create the largest Bakken/Three Forks producer with over 107,000 barrels of oil equivalent per day of production in the first quarter of 2014, 855,000 combined net acres and an inventory of 3,460 net

future drilling locations. The combined company's leading oil-weighted platform will drive meaningful production and operational synergies through complementary acreage positions, the application of technological expertise and greater access to capital to accelerate drilling. The Kodiak purchase will give Whiting drilling rights across 855,000 net acres, surpassing Exxon Mobil Corp. as the second-biggest leaseholder in the area, according to data compiled by *Bloomberg*. According to Whiting's Chairman and CEO James Volker, the Proposed Transaction will boost Whiting's output by 50% next year. That would be Whiting's largest annual increase since 2005. The market recognizes that Whiting is getting Kodiak for a bargain price. Since the deal was announced, the price of Whiting common stock has risen over 16%, from $78.54 per share to as high as $91.15 per share.

51. Following the public announcement of the Proposed Transaction, several Kodiak stockholders have voiced their concerns about the proposed consideration. Richard Hulf ("Hulf"), co-manager of the Artemis Global Energy Fund, called the bid disappointing and values Kodiak at $17.00 per share. In assessing the companies' respective assets in the Bakken formation in North Dakota and Montana, Bakken Hulf viewed Kodiak's acreage as superior to Whiting's. In an interview with *Bloomberg*, Hulf explained:

> Putting the two [companies] together doesn't make it any better for us because we preferred the acreage that Kodiak had in what we regarded as the sweet spot of the play. . . . We would like to see a higher bid.

### THE MATERIALLY DEFICIENT PROXY STATEMENT

52. In an attempt to secure support for the Proposed Transaction, defendants issued a materially false and misleading Proxy Statement to Kodiak stockholders on August 18, 2014. The Proxy Statement, which recommends that stockholders vote in favor of the Proposed Transaction,

omits material information concerning: (i) the Board's review of other strategic alternatives considered in lieu of a sale; (ii) the terms of competing transactions proposed to the Company; (iii) the Board's retention of financial advisors; and (iv) inputs and assumptions underlying the valuation analyses performed by Kodiak's financial advisors. The Proxy Statement omits and/or misrepresents such material information, as set forth in detail below, in contravention of §§14(a) and 20(a) of the 1934 Act.

53. ***The Company's Strategic Alternatives Long-Term Strategic Plan***. The Proxy Statement reveals that the Board continuously considered the Company's strategic alternatives and long-term strategic plan, both generally and in the context of specific meetings, leading up to the Arrangement Agreement. As a general matter, the Proxy Statement explains that the Board would frequently consider and evaluate "potential strategic alternatives, including business combinations, acquisitions, dispositions and internal restructurings," in connection with its regular review and assessment of the Company's strategic plan.

54. More specifically, the Board evaluated Kodiak's broader strategic alternatives at many points throughout the sales process. When the Board began considering a possible sale in December 2011, the Board discussed "Kodiak's long-term strategic goals, the strategic alternatives available to Kodiak, and the risks and costs associated with each alternative." During a meeting on March 9, 2012, the Board requested for the Company's financial advisors to review "potential strategic alternatives that might be available to Kodiak" in light of inquiries the Company received from a company referred to as "Company B." On July 31, 2012, the Board met again to consider a potential sale, as well as to "discuss and review Kodiak's long-term strategic goals and certain other strategic alternatives" available to the Company. When the Board met on January 29, 2013, it

discussed, among other things, a combination with another interested acquirer, "as well as other strategic alternatives available to Kodiak." During a meeting on April 29, 2014, just weeks before approving the Proposed Transaction, the Board "held a lengthy discussion on the potential strategic transactions and reviewed the Kodiak's current long-term strategic plan."

55.     However, the Proxy Statement omits: (i) the specific strategic alternatives that the Board was considering in lieu of a sale; (ii) any and all analyses of those alternatives, including the additional value that could be created for Kodiak stockholders; (iii) and any details of the Company's "long-term strategic plan." This information is material because stockholders are entitled to know why the Board preferred the Proposed Transaction over other strategic alternatives, including the nature and financial viability of such options. Information concerning the Company's operative reality at the time of the Proposed Transaction is also material to stockholders' decision of whether to accept the proposed consideration or seek or an appraisal of their shares. Further, stockholders are also entitled to know whether the Board was properly informed as to the Company's alternatives and their value relative to the Proposed Transaction prior to entering into the Arrangement Agreement. In fact, the Proxy Statement identifies the Board's consideration and knowledge of the Company's "financial plan and prospects if Kodiak were to remain an independent public company" as a basis for recommending that stockholders vote in favor of the Proposed Transaction.

56.     ***The Terms of Earlier Acquisition Proposals***. According to the Proxy Statement, the Board met on June 28, 2014 to discuss the Company's ongoing negotiations with Whiting. At this meeting, Petrie also reviewed with the board "two new third-party inquiries regarding proposed strategic transactions received during the preceding week." Petrie presented a "summary

comparison of the assets, recent trading history, relative positioning and pro forma analyses a combination of Kodiak with each of the two new parties proposing strategic transactions and with Whiting." Following this presentation, the Board concluded that a potential combination with Whiting was superior to a potential transaction with either of the two new parties.

57.     However, the Proxy Statement omits even basic terms of the transactions proposed by either of these new parties, including the nature of the transaction between the companies and the proposed consideration. The omission of this information renders the Proxy Statement materially misleading and incomplete because the terms of any competing offers bears directly on the relative value of the consideration offered in the Proposed Transaction. To the extent these competing proposals offered greater consideration or the certainty associated with an all-cash offer, stockholders must be permitted to evaluate the Proposed Transaction within that broader context. The materiality of the terms of these competing offers is heightened by the fact that the Board agreed to consideration that represented a *negative premium* to Kodiak's stock price.

58.     *The Board's Selection of Financial Advisors*. Over the course of the sales process, the Board utilized multiple financial advisors to assist in its evaluation of the Company's strategic alternatives and potential sale to Whiting or other prospective buyers. As the Proxy Statement explains, the Board retained both Credit Suisse and an investment bank referred to as "Former Advisor A" in September 2012 to "act as its financial advisors in connection with Kodiak's evaluation of strategic alternatives." Credit Suisse and Former Financial Advisor A contacted certain oil and gas companies that they believed may have an interest in acquiring Kodiak. The Board ultimately did not move forward in negotiations with any of these potential buyers.

59.     When discussions of a transaction with Whiting became advanced in early 2014, the Board sought to again retain the advisory services of an investment bank.  Following a meeting on March 9, 2014, the Board decided to engage Petrie.  During a meeting on June 28, 2014, the Board "discussed the desirability of engaging another investment bank," in addition to Petrie, to render an opinion as to the fairness of a potential sale of the Company, with the Board ultimately retaining Credit Suisse.

60.     However, the Proxy Statement omits material information concerning the Board's retention of its advisors, including: (i) when and why the initial engagements with Credit Suisse and Former Financial Advisor A were terminated; (ii) the basis for initially engaging Petrie over Kodiak's previously financial advisors in connection with its negotiations with Whiting and other potential buyers in March 2014; and (iii) the Board's reasons for engaging a second financial advisor to render an opinion on the fairness of the Proposed Transaction from a financial perspective.  This information is material because it allows stockholders to evaluate whether any of the Company's financial advisors suffered from conflicts of interest or were otherwise unable to provide the advisory services that the Board requested.  Given that the Board based its decision to approve the Arrangement Agreement on, among other things, the advice it received from its financial advisors, clarification concerning the erratic and inconsistent engagement of multiple investment banks must also be explained.

61.     ***Inputs and Assumptions Underlying Petrie's Discounted Cash Flow Analysis***.  In connection with rendering its fairness opinion to the Board, Petrie performed a Discounted Cash Flow ("DCF") analysis.  This DCF analysis utilized Kodiak's projected future cash flows generated from Kodiak's producing and development reserves to determine indicative values of Kodiak's

common stock.  In doing so, Petrie evaluated four scenarios in which the principal variable in the analysis was oil and gas prices, including: (i) NYMEX 5-year strip pricing; (ii) $80.00 oil and $3.50 gas; (iii) $90.00 oil and $4.00 gas; and (iv) $100.00 oil and $4.50 gas.  Applying various discount rates ranging from 7.0% up to 17.5%, Petrie's analysis produced a wide range of implied values for Kodiak, ranging from as low as $8.24 per share to as high as $20.56 per share.

62.    However, the Proxy Statement omits basic inputs and assumptions necessary to evaluate and understand Petrie's analysis, including: (i) the specific prices used from the NYMEX 5-year strip; (ii) the individual inputs and assumptions used to derive the discount rate range of 7.0% to 17.5%; and (iii) the specific discount rate ranges applied to the cash flows from each of the individual reserve categories and geographic locations.

63.    These omissions render the Proxy Statement materially misleading because they have a significant impact on the outputs of the DCF analysis.  Stockholders are entitled to know the basis for the selection of these inputs so that they can determine if they are appropriate, and if not, select their own to better value the Company and its assets.  Without disclosure of this information, stockholders cannot determine if the DCF analysis is an adequate measure of the Company's intrinsic value, and thus do not have the information necessary to make a competent decision whether to vote in favor of the Proposed Transaction.

64.    ***Inputs and Assumptions Underlying Petrie's Comparable Transactions Analysis***. To assess the fairness of the consideration offered in the Proposed Transaction, Petrie reviewed publicly-available information for 21 oil and gas transactions announced between November 2010 and July 2014 that included assets in the Williston Basin and had a value greater than $100 million. Utilizing the multiples implied by these transactions, Petrie applied transaction multiples to Kodiak's

assets to calculate an implied value range per share of Kodiak common stock. With respect to Kodiak, Petrie applied transaction multiples ranging from $25.00 to $35.00 per BOE of proved reserves and $140,000 to $170,000 per BOE/d.  Based on the application of these transaction multiples, Petrie determined an implied equity value reference range of $8.34 to $13.07 per share of Kodiak common stock.

65.     However, the Proxy Statement omits critical elements of Petrie's analysis: (i) the actual observed multiples of each of the precedent transactions for transaction-value/proved reserves and transaction values/production; and (ii) the individual implied equity value ranges from each of the selected an applied multiple ranges for Kodiak.  This information is material because without the individually observed multiples, stockholders do not have the information necessary to determine how the selected transactions actually compare to the offer by Whiting, and thus are unable to assess whether Petrie has adequately compared the Company's transaction performance to its selected comparable transactions.

66.     ***Inputs and Assumptions Underlying Credit Suisse's Selected Company Analysis***.  In its Selected Companies Analysis, Credit Suisse evaluated the value of Kodiak using the metrics of other businesses of similar size in the same industry.  Credit Suisse considered certain financial data for Whiting, Kodiak and selected companies with publicly traded equity securities that Credit Suisse deemed relevant.  The analysis indicated an implied exchange ratio reference range of 0.103x to 0.229x of a share of Whiting common stock for each Kodiak common share as compared to the exchange ratio in the arrangement of 0.177x of a share of Whiting common stock for each Kodiak common share.

67.     However, the Proxy Statement omitted critical inputs within this analysis that are necessary for it to have any significant meaning to stockholders.  Specifically, the Proxy Statement fails to disclose: (i) the individual implied equity value ranges for each of the selected and applied multiples ranges for both Kodiak abdicate and Whiting; and (ii) whether Credit Suisse performed any type of benchmarking analyses for Kodiak or Whiting in relation to the selected public companies.  This information is material because without these implied value ranges and multiples, as well as any benchmarking analyses, stockholders do not have the information necessary to determine how the selected companies actually compare to Kodiak and Whiting.  Without being able to compare Kodiak and Whiting to the selected companies, this analysis will have little to no value to stockholders.

## DEFENDANTS' FIDUCIARY DUTIES

68.     Under Canadian law, the Individual Defendants, as directors of Kodiak, are required (a) to act honestly and in good faith with a view to the best interests of the corporation, and (b) in doing so, to exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.

69.     Moreover, in any situation where the directors of a corporation undertake a transaction that puts the corporation "in play" (*i.e.*, where it is apparent there will be a sale of equity and/or voting control), directors and/or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's stockholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits them from complying with their fiduciary duties;

- 25 –

(d)      will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders; and/or

(e)      will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public stockholders.

70.      In addition, the Individual Defendants, as directors of Kodiak, are obligated under Canadian law to:

(a)      refrain from engaging in acts or omissions, exercising their powers as directors, or carry on or conduct, or threaten to carry on or conduct, the business and affairs of Kodiak in a manner that is oppressive or unfairly prejudicial to the interests of stockholders;

(b)      ensure that proper mechanisms are in place when participating in any transaction where the directors' or officers' loyalties are divided so that stockholders are treated fairly;

(c)      provide stockholders with enough information to make a reasoned judgment about the issues presented to them;

(d)      refrain from participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation;

(e)      exercise the care, diligence, and skill that a reasonable prudent person with their knowledge and experience would exercise in a comparable circumstance;

(f)      refrain from unjustly enriching themselves at the expense or to the detriment of the public stockholders; and/or

(g)      refrain from unjustly entrenching themselves as managers and/or officers of the Company by failing to give adequate consideration to legitimate bids for the Company.

71.      The Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties and aiding and/or abetting such breaches, including their duties of care, loyalty, good faith, and independence owed to plaintiff and other public stockholders of Kodiak.

72.      The Individual Defendants, separately and together, have violated and are continuing to violate the reasonable expectations of the Company's stockholders by oppressive, unfairly prejudicial conduct insofar as they have deprived plaintiff and the Class of their reasonable expectation to receive fair value for the shares.

## CLASS ACTION ALLEGATIONS

73.      Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all public holders of Kodiak common stock who are being and will be harmed by defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

74.      This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

75.      The Class is so numerous that joinder of all members is impracticable. According to Kodiak's U.S. Securities and Exchange Commission filings, as of April 30, 2014, Kodiak had over 266 million common shares outstanding.

76.    There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)    whether the defendants are breaching their fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Transaction, and/or are aiding and abetting therein;

(b)    whether defendants are engaging in self-dealing in connection with the Proposed Transaction, and/or are aiding and abetting therein;

(c)    whether defendants are unjustly enriching themselves and other insiders or affiliates of Kodiak and/or Whiting, and/or are aiding and abetting therein;

(d)    whether defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets, and/or have aided and abetted therein;

(e)    whether defendants withheld material information from the Proxy Statement that prevented the members of the Class from making informed decisions on the stockholder vote on the Proposed Buyout and/or whether to seek an appraisal of their shares;

(f)    whether the Proposed Transaction compensation payable to plaintiff and the Class is unfair and inadequate; and

(g)    whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

77.    Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

- 28 –

78.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

79.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

80.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

81.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

82.     Plaintiff repeats and realleges each allegation set forth herein.

83.     Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, plaintiff brings this action derivatively on behalf of Kodiak to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of defendants' misconduct.  Plaintiff is a stockholder of Kodiak and will adequately represent the interests of the Company in this litigation.

84.     At the time of the filing of this action, Kodiak's Board was composed of five directors, namely Individual Defendants Peterson, Catlin, Krysiak, Knutson and Lidstone.  Plaintiff has not made a demand on the Board to bring this action because doing so would be a futile and useless act for the reasons detailed below.

85.     All of the current directors (Peterson, Catlin, Krysiak, Knutson and Lidstone) have been named as defendants in this action and each of those five was a director during the time period when the Individual Defendants are alleged to have breached their fiduciary duties in the process leading to the Proposed Transaction, thus harming the Company.

86.     A pre-suit demand upon the Board is a useless and futile action and therefore excused for several reasons.  First, a pre-suit demand is excused because the Individual Defendants, the entirety of the Board, are interested in the outcome of this litigation, having caused Kodiak to enter into the Arrangement Agreement in breach of their fiduciary duties. Consequently, those directors face a substantial likelihood of liability and are interested in the outcome of this action.  Second, the wrongful acts complained of herein evidence a pattern of conduct on the part of the Individual Defendants that shows a wholesale abandonment of their fiduciary duties.

87.     Therefore, a pre-suit demand upon the Kodiak Board before commencing this action is unnecessary.

88.     Plaintiff has not made any demand on stockholders of Kodiak to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Kodiak is a publicly traded company with approximately 266 million shares outstanding, and thousands of stockholders;

(b)     making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of stockholders; and

(c)     making demand on all stockholders would force plaintiff to incur huge expenses, assuming all stockholders could be individually identified.

**COUNT I**

**Derivative Claim Against the Individual Defendants
for Breach of Fiduciary Duties**

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein. Plaintiff asserts this claim derivatively on behalf of Kodiak.

90.     The Individual Defendants are violating fiduciary duties owed to Kodiak.

91.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are violating fiduciary duties owed to Kodiak by considering a transaction with Whiting without regard to the fairness of the transaction to Kodiak.

92.     As demonstrated by the allegations above, the Individual Defendants are violating fiduciary duties owed to Kodiak by, among other things:

(a)     ignoring or not protecting against the numerous conflicts of interest resulting from their own interrelationships or connection with the Proposed Transaction; and

(b)     failing to fully inform themselves of the market value of Kodiak before taking, or agreeing to refrain from taking, action concerning the Proposed Transaction.

93.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have violated their fiduciary duties owed to Kodiak.

94.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward Kodiak, and have breached and are breaching their fiduciary duties owed to Kodiak.

95.     As a result of the Individual Defendants' actions, the Company has been and will continue to be irreparably harmed and is entitled to injunctive relief.

**COUNT II**

**Class Claim for Breach of Fiduciary Duties**
**Against the Individual Defendants**

96.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein. Plaintiff asserts this claim individually and on behalf of Kodiak's stockholders.

97.     The Individual Defendants are violating their fiduciary duties owed to Kodiak's stockholders.

98.     By the acts, transactions, and course of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from Kodiak.

99.     The Individual Defendants are violating their fiduciary duties by proposing that Kodiak enter into the Proposed Transaction without regard to the effect of the proposed transaction on Kodiak's stockholders.

100.    As demonstrated by the allegations above, the Individual Defendants are failing to exercise the care required, and breached their fiduciary duties owed to the stockholders of Kodiak because, among other reasons:

(a)     they are failing to properly value Kodiak and its various assets and operations; and

(b)     they are ignoring or are not protecting against the numerous conflicts of interest resulting from the Individual Defendants' own interrelationships or connection with the Proposed Transaction.

101.    The Individual Defendants are engaging in self-dealing, are not acting in good faith toward Kodiak's stockholders, and have breached and are breaching their fiduciary duties to Kodiak's stockholders.

102.    Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Kodiak's stockholders, and may consummate the Proposed Transaction, all to the irreparable harm of Kodiak's stockholders.

103.    Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT III

**Class Claim for Aiding and Abetting Breaches of Fiduciary Duty
Against Whiting Petroleum and Acquiror Canadian Sub**

104.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein. Plaintiff asserts this claim individually and on behalf of Kodiak's stockholders.

105.    The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

106.    By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

107.    Whiting Petroleum and Acquiror Canadian Sub colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

108.    Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts by the Individual Defendants as aided and abetted by Whiting Petroleum and Acquiror Canadian Sub.

## COUNT IV

**Class Claim for Violations of §14(a) of the 1934 Act and SEC Rule 14a-9
Promulgated Thereunder Against the Individual Defendants**

109.    Plaintiff repeats and realleges each allegation set forth herein.

110.    During the relevant period, the Individual Defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

111.    The Proxy Statement was prepared, reviewed and/or disseminated by the Individual Defendants.  It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets.

112.    In so doing, the Individual Defendants made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.

113.    The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

- 34 –

114.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

115.    By reason of the foregoing, the Individual Defendants have violated §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

116.    Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT V

### Class Claim for Violation of §20(a) of the 1934 Act
### Against the Individual Defendants

117.    Plaintiff repeats and realleges each allegation set forth herein.

118.    The Individual Defendants acted as controlling persons of Kodiak within the meaning of §20(a) of the 1934 Act as alleged herein.   By virtue of their positions as officers and/or directors of Kodiak and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

119.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

120.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction, and they were thus directly involved in the making of this document.

121.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that these defendants reviewed and considered, descriptions which had input from both the Individual Defendants.

122.    By virtue of the foregoing, the Individual Defendants have violated §20(a) of the 1934 Act.

123.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, Kodiak's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands injunctive relief, in plaintiff's favor, in favor of the Class and in Kodiak's favor and against defendants, as follows:

A.      Declaring that plaintiff may maintain Count I derivatively and that plaintiff is an adequate representative on behalf of the Company;

B.      Declaring that Counts II-V are properly maintainable as a class action;

C.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for stockholders;

D.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of Kodiak's stockholders and to refrain from entering into any transaction until the process for the sale or merger of the Company is completed and the highest possible value is obtained;

E.      Directing defendants to amend or supplement the Proxy Statement to cure its deficiencies and provide all material information necessary for Kodiak stockholders to make informed decisions on whether to vote in favor or against the Proposed Transaction or seek appraisal of their shares;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.     Granting such other and further equitable relief as this Court may deem just and

proper.

DATED: October 21, 2014                    THE SHUMAN LAW FIRM
                                           KIP B. SHUMAN (23593)
                                           RUSTY E. GLENN (39183)


                                                    *s/ Kip B. Shuman*
                                           ───────────────────────────
                                                   KIP B. SHUMAN

                                           885 Arapahoe Avenue
                                           Boulder, CO  80302
                                           Telephone:  303/861-3003
                                           303/484-4886 (fax)
                                           kip@shumanlawfirm.com
                                           rusty@shumanlawfirm.com

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           RANDALL J. BARON
                                           A. RICK ATWOOD, JR.
                                           DAVID T. WISSBROECKER
                                           EDWARD M. GERGOSIAN
                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)
                                           randyb@rgrdlaw.com
                                           ratwood@rgrdlaw.com
                                           dwissbroecker@rgrdlaw.com
                                           egergosian@rgrdlaw.com

                                           LEVI & KORSINSKY, LLP
                                           SHANE T. ROWLEY
                                           30 Broad Street, 24th Floor
                                           New York, NY 10004
                                           Telephone:  212/363-7500
                                           866/367-6510 (fax)
                                           srowley@zlk.com

                                           *Attorneys for Plaintiff*

- 38 –

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Terence Sohler, duly certify and say, as to the claims asserted under the federal securities laws, that:

1.     I have reviewed the complaint and authorized its filing.

2.     I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.     I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     My transaction(s) in Kodiak Oil & Gas Corp. securities which are the subject of this litigation during the class period set forth in the complaint are laid as follows:

| Security | Date of Transaction | Number of shares purchased or sold | Cost/Proceeds |
|---|---|---|---|
| Common Stock | 12/09/2013 | 5000 | 53,750 |
| | 12/11/2013 | 5000 | 53,650 |
| | 12/12/2013 | 5000 | 52,650 |
| | 12/13/13 | 8000 | 83,840 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.     Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6.     I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating

to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.  Executed this ___6th__ day of October 2014.

_____

Terence Sohler

## VERIFICATION

I, Terence Sohler, hereby verify that I am familiar with the allegations in Plaintiffs' Verified Amended Shareholder Derivative and Class Action Complaint (the "Complaint"), and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: __10/20/14__          __Terence Sohler__
                                    TERENCE SOHLER